OPINION
{¶ 1} Wilbur Taylor appeals from the judgment of the Common Pleas Court in favor of Appellee, K-Mart Corporation. This litigation began when Taylor alleged that he was injured when he slipped and fell on water inside the entrance to the defendant's store. K-Mart denied liability and moved for summary judgment which was granted by the trial court after reviewing the defendant's answers provided in a discovery deposition.
 {¶ 2} Taylor testified that he went to the K-mart store on Old Troy Pike in Huber Heights, Ohio in the late morning of October 19, 2004 to meet his wife to buy some dishes. Taylor testified that it was a clear day as he entered the store. He then testified as follows:
 {¶ 3} "A. Yes. I parked my car. I went through the first set of doors, and with my right hand, I reached to pull the doors that enter the store open. I pulled it open and went to enter the store, and I slipped and fell back like this with my right hand still on the door and my left leg forward, and my right leg was bent up underneath of me. At that time I hit the floor, and my — I tried to brace myself from the fall, and at that time I hit the floor, I noticed that the floor was wet.
 {¶ 4} "Q. You indicated this was the first set of doors. Can you kind of describe for me how this entranceway was set up?
 {¶ 5} "A. As far as my recollection, you enter — you entered, I guess, from this way the store, and then this was the store. You entered it, and then you turned to your left to go through the doors that enter the main store (indicating).
 {¶ 6} "Q. And so you had to go through two sets of doors in order to get into the actual shopping area of the Kmart? *Page 3 
 {¶ 7} "A. Yes, yes.
 {¶ 8} "Q. And this happened on the first set of doors before you got into the little area?
 {¶ 9} "A. No, it happened on the second set of doors before you go into the shopping area.
 {¶ 10} "Q. Did anybody see the incident occur?
 {¶ 11} "A. Yes.
 {¶ 12} "Q. Who saw the incident occur?
 {¶ 13} "A. An elderly lady that was a cashier.
 {¶ 14} "Q. Do you know her name?
 {¶ 15} "A. No, I don't.
 {¶ 16} "Q. Did you speak with that person?
 {¶ 17} "A. As I got up, I said there's water on the floor.
 {¶ 18} "Q. Did that person say anything?
 {¶ 19} "A. I — no, I don't think she did, because at that point in time, I was not really paying any attention to her because I was more concerned about getting up and-
 {¶ 20} "MR. DURDEN: The question was did that person say anything.
 {¶ 21} "THE WITNESS: Oh, yes, she asked me if I was all right.
 {¶ 22} "BY MR. WACHTMAN:
 {¶ 23} "Q. Did that person say anything else?
 {¶ 24} "A. No.
 {¶ 25} "Q. You indicated there was water on the floor. How do you know it *Page 4 
was water on the floor?
 {¶ 26} "A. Because my left buttocks on my jeans was wet and my hand was wet.
 {¶ 27} "Q. In other words, was the substance clear? In other words, it wasn't — was it clear like water is?
 {¶ 28} "A. Yes.
 {¶ 29} "Q. Do you know how that water got there?
 {¶ 30} "A. No.
 {¶ 31} "MR. DURDEN: Objection.
 {¶ 32} "BY MR. WACHTMAN:
 {¶ 33} "Q. Do you know how long the water was there?
 {¶ 34} "MR. DURDEN: Objection.
 {¶ 35} "MR. WACHTMAN: He can answer, correct?
 {¶ 36} "MR. DURDEN: Yes.
 {¶ 37} "THE WITNESS: No."
 {¶ 38} Taylor continued his testimony later as follows:
 {¶ 39} "Q. So, you did actually go into the store then, correct? After you fell down, you went into the store?
 {¶ 40} "A. Yes.
 {¶ 41} "Q. And at some point you actually went out of the store again through a different set of doors?
 {¶ 42} "A. Yes. *Page 5 
 {¶ 43} "Q. And you believe that was to the left of where the incident occurred?
 {¶ 44} "A. Yes. Well, going out would be to my right.
 {¶ 45} "Q. As you're going out, correct?
 {¶ 46} "A. Yeah.
 {¶ 47} "Q. Did you see any water on the floor as you entered the store?
 {¶ 48} "A. No, I wasn't looking down.
 {¶ 49} "Q. Can you describe the floor at all to me?
 {¶ 50} "A. No. They had a rug there and that's basically — when I slipped and fell, that's when I noticed the rug being there. What color it was or anything, I just know it was a rug there.
 {¶ 51} "Q. Did you trip at all?
 {¶ 52} "A. No.
 {¶ 53} "Q. So, this was just a slip with which foot, do you recall?
 {¶ 54} "A. My left foot.
 {¶ 55} "Q. Do you recall what kind of shoes you were wearing?
 {¶ 56} "A. Timberland boots.
 {¶ 57} "Q. What did you do after you fell down?
 {¶ 58} "A. I got up, brushed off the back of my pants and wiped my hands on my pants, and I was rubbing my arm, because at that point by me hanging onto the door — I have no radial head — and pulled the muscles in my arm, and I was more concerned about my arm and I was rubbing my arm and went back and met my wife."
 {¶ 59} In granting summary judgment, the trial court noted that the plaintiff had *Page 6 
not established that the water on the store's floor had been there long enough that it should have been discovered by K-Mart had they exercised ordinary care in inspecting its premises.
 {¶ 60} Taylor argues in his sole assignment of error that there is a heightened duty of care with respect to policing entranceways to businesses, and K-Mart had a duty to inspect the entranceway to ensure that patrons would not slip on a watery floor. Taylor argues that K-mart provided no evidence as to when it last inspected the entranceway prior to his fall. Taylor argues that the placement of the mat at the entranceway was evidence that K-mart knew about the potential hazard of water at that location.
 {¶ 61} K-Mart argues that we should affirm the trial court because Taylor failed to present any evidence to support his argument that K-Mart was on "constructive notice" of the presence of the water on its floor. It argues that constructive notice was not established because K-Mart placed a mat in front of the door. K-Mart argues that the facts in DeVaughn v. City of Dayton (November 8, 2002), Montgomery App. No. 19333 are similar to the facts presented here. In DeVaughn, the claimant slipped on what she guessed was water while walking in the Dayton Convention Center. However, she offered no additional information sufficient to impose liability upon the city. We noted in that case:
 {¶ 62} "There is no evidence in this record that the Convention Center staff had actual knowledge of any water on the floor. Likewise, there is no evidence that the floor was wet for a length of time sufficient to justify an inference that the Convention Center had constructive notice of the condition. * * * *Page 7 
 {¶ 63} "Moreover, we find nothing in Devaughn's deposition testimony to support a finding that the City was responsible for the hazard of which she complains; * * * We conclude that DeVaughn has failed to demonstrate that a genuine issue of material fact exists with regard to her claim. Therefore, the trial court did not err by rendering summary judgment against her." Id. At *P30-35.
 {¶ 64} The facts are identical in the present case. Mr. Taylor slipped on what he believed to be water, however, he offered no evidence that K-Mart created the condition, that K-Mart had actual knowledge of the condition, or that the condition existed for a length of time sufficient to warrant an inference that it should have been discovered.
 {¶ 65} In Johnston v. Miamisburg Animal Hospital, Inc. (August 31, 2001), Montgomery App. No. 18863, this court upheld summary judgment on similar grounds. In Johnston the plaintiff alleged he slipped on a wet spot when he stepped into the kennel area of the animal hospital. Notably, the plaintiff did not provide evidence that the animal hospital created the condition nor did he provide the length of time the water had been on the floor. As a result this court held: "the record fails to indicate that the Hospital had actual knowledge of the existence of water on the cement floor. Nor is there any evidence as to how long the floor had been wet from which a trier of fact could infer that the Hospital had constructive notice of the condition. * * * In sum, the record fails to establish any of the three methods of demonstrating a breach of duty in a slip and fall case * * * Accordingly, there being no genuine issue of material fact on the question of the Hospital's duty of care, the trial court properly granted summary judgment." Id. At *8-10.
 {¶ 66} If a claimant does not present evidence to satisfy one of the three ways to *Page 8 
establish liability, the jury would be required to engage in pure speculation as to the cause of the slip and fall. Roe v. Perkin's FamilyRestaurants (September 12, 2003), Montgomery App. No. 19752.
 {¶ 67} Notably, it was a clear day when Mr. Taylor fell entering the K-Mart store. It was October so snow would not likely have been tracked into the store. We agree with the appellee that K-Mart's placement of a mat at the doorway did not put it on constructive notice of the water on the floor. We cannot distinguish this case from that ofDeVaughn or Johnston. Taylor failed to present any evidence that K-Mart was on actual or constructive notice of the water on its floor so that it could act to remove it in time to prevent injury to Taylor. Appellant's assignment of error must be overruled.
 {¶ 68} The judgment of the trial court is affirmed.
 FAIN and GRADY, JJ., concur. *Page 1